# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

**Carl Soto** and **Jarvis Washington,**

          Plaintiffs,

  v.

**Andrew DeRungs,** individually and in his official capacity as a Technical Sergeant for the Minnesota State Patrol;

**Jacob Lempelius,** individually and in his official capacity as a Patrol Trooper for the Minnesota State Patrol;

**Jason Engeldinger**, individually and in his official capacity as a Captain for the Minnesota State Patrol;

**Andrew Martinek**, individually and in his official capacity as a Lieutenant for the Minnesota State Patrol;

**Dana Miletich,** individually and in his official capacity as a Lieutenant for the Minnesota State Patrol; and

**Denise Lein**, individually and in her official capacity as a Lieutenant for the Minnesota State Patrol.

          Defendants.

Case No. 22-CV-948-DTS
Case Type: Civil Rights / § 1983

**FIRST AMENDED**
**COMPLAINT**
**(JURY TRIAL DEMANDED)**

_____

# INTRODUCTION[1]

1. Freedom of speech is a fundamental right safeguarded by the due process clause of the Fourteenth Amendment. The right of peaceable assembly is a right cognate to that of free speech and is equally fundamental. It is true that these rights may be abused by using speech or assembly in order to incite to violence and crime, and so the people through their Legislatures may protect against that abuse. But the legislative intervention can find constitutional justification only by dealing with the abuse. The rights themselves cannot be curtailed. The greater the importance of safeguarding the community from incitements to the overthrow of our institutions, the more imperative is the need to preserve inviolate the constitutional rights of free speech and free assembly.

2. It follows that, consistently with the Constitution, peaceable assembly and political action cannot be proscribed. Those who assist in the conduct of such meetings cannot be branded as criminals on that score. The question, if the rights of free speech and peaceable assembly are to be preserved, is not as to the auspices under which the meeting is held but as to its purpose; not as to the relations of the speakers, but whether their utterances transcend the

---

[1] De Jonge v. Oregon, 299 U.S. 353, 364–65 (1937).

bounds of the freedom of speech which the Constitution protects. If the persons assembling have committed crimes elsewhere, if they have formed or are engaged in a conspiracy against the public peace and order, they may be prosecuted for their conspiracy or other violation of valid laws. But it is a different matter altogether when the State, instead of prosecuting them for such offenses, seizes upon mere participation in a peaceable assembly and a lawful public discussion as the basis for a criminal charge.

3. This case is about the efforts of two young men to engage in peaceful protests regarding the killing of Daunte Wright. The entirety of the events giving rise to this Complaint were captured on video. Plaintiffs were detained within minutes of arriving at the Brooklyn Center Police Department. Despite having no legitimate basis to do so, Defendants then arrested and criminally charged the Plaintiffs. Plaintiffs now sue for redress.

**JURISDICTION AND VENUE**

4. Plaintiffs base their claims on Title 42 U.S.C. § 1983. This Court therefore has federal question subject matter jurisdiction pursuant to Title 28 U.S.C. §§ 1331 and 1343.

5.   Venue in this Court is appropriate pursuant to Title 28 U.S.C § 1391. Defendants are citizens of this State and District, and the unlawful practices alleged herein occurred within this State and District.

## PARTIES

6.   Plaintiff Carl Soto is a resident and domiciliary of Hillsborough County, Florida. At the time of the events complained of herein, Mr. Soto was a pastor, law student, and Vice-President of Florida-based Black Lives Matter Restoration Polk Inc. ("BLMRP"). Furthermore, at the time of the events complained of herein, Mr. Soto was required to use crutches for mobility purposes.

7.   Plaintiff Jarvis Washington is a resident and domiciliary of Polk County, Florida. At the time of the events complained of herein, Mr. Washington was a law student and President of BLMRP.

8.   Defendant Jason Engeldinger was and still is a Captain for the Minnesota State Patrol. Captain Engeldinger was the State Patrol Incident Commander during the events complained of herein and is an adult resident of this State and District. This Defendant has managerial, supervisory, and

4

policymaking authority with the power to make and enact official policy on particular issues.

9. Defendants Dana Miletich, Andrew Martinek and Denise Lein were and still are Lieutenants for the Minnesota State Patrol. The Lieutenant Defendants were designees of the State Patrol Incident Commander during the events complained of herein and are adult residents of this State and District. The Lieutenant Defendants have supervisory and policymaking authority with the power to make and enact official policy on particular issues.

10. Defendant Andrew DeRungs was and still is a Technical Sergeant for the Minnesota State Patrol. Upon information and belief, Sgt. DeRungs is an adult resident of this State and District.

11. Defendant Jacob Lempelius was and still is a Patrol Trooper for the Minnesota State Patrol. Upon information and belief, Trooper Lempelius is an adult resident of this State and District.

12. At all times relevant to this Complaint, Defendants acted under the color of state law and within the scope of their official duties, as within the meaning of 42 U.S.C. § 1983, *et seq*.

## BACKGROUND FACTS

5

13. Plaintiffs incorporate the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

14. On May 25, 2020, Officer Derek Chauvin killed 46-year-old George Floyd in Minneapolis, MN. Chauvin was later convicted of second- and third-degree murder, second-degree manslaughter, and deprivation of rights under color of law resulting in death.

15. Chauvin faced trial on the state-level charges at the Hennepin County Government Center in Minneapolis, Minnesota between March. 8, 2021 and April 20, 2021

16. On April 11, 2021, Officer Kimberly Potter shot and killed 20-year-old Daunte Wright in Brooklyn Center, MN. Potter was later convicted of first- and second-degree manslaughter.

17. Plaintiffs were deeply disturbed by the foregoing events, and traveled to Minnesota to offer support to Wright's family on behalf of themselves and BLMRP.

18. On the evening of April 16, 2021, Plaintiffs were visiting the Mall of America in Bloomington, MN.

19. At approximately 8:15 p.m., Wright's family requested that Plaintiffs join them and others at the Brooklyn Center Police Department ("BCPD") for a peaceful protest.

20. Soto then called both the Hennepin County Sheriff's Office and the Brooklyn Center Department of Public Safety and confirmed that there was no curfew or other restrictions that would bar them from lawfully joining the protest.

21. At approximately 9:20 p.m., Plaintiffs left the Mall of America and drove to BCPD.

22. Plaintiffs arrived near the BCPD at 9:54 p.m. and parked at a nearby shopping center.

23. Plaintiffs then walked towards the protest site, with Soto moving slowly and cautiously in light of the crutches.

24. Plaintiffs' purpose was entirely lawful—to peaceably assemble with others to express themselves and petition for redress of grievances.

25. Within minutes of Plaintiffs' arrival, law enforcement began shooting rubber bullets, tear gas, mace, flash bangs, and sponge grenades into the crowd

of peaceful protesters. Law enforcement did not give Plaintiffs or others gathered nearby an order or warning before doing so.

26. Plaintiffs, in fear for their safety, immediately began leaving.

27. As Plaintiffs walked back to their rental car, an officer screamed at them to, "leave, now!" Soto verbally confirmed that he was doing so.

28. However, law enforcement—including State Patrol officers acting at the direction and under the supervision of Defendants Engeldinger, Martinek, Miletich, and Lein—immediately kettled Plaintiffs and others and blocked them from leaving.[2]

29. Unable to move, Plaintiffs sat in their car as police blocked people from leaving and arrested them.

30. Approximately 30 minutes later, Defendants DeRungs and Lempelius arrested Plaintiffs at the direction and under the supervision of Defendants Engeldinger, Martinek, Miletich, and Lein.

---

[2] MPR News Staff and the Associated Press, More than 100 people arrested on sixth night of Brooklyn Center protests; journalists detained, MPR News (Apr. 17, 2021, 10:55 AM), https://www.mprnews.org/story/2021/04/17/law-enforcement-response-swift-on-sixth-night-of-protests ("Within minutes, in what many in the remaining crowd described as a stunning show of force, law enforcement rushed in to the area to corral the crowd — protesters and media alike. . .").

8

31. Defendants refused to respond to Soto's repeated requests to know the basis for the apprehension.

32. Defendants additionally refused to provide their names and badge numbers, which they also hid from display.

33. Defendants then brought Plaintiffs to the BCPD and charged them with violating Minn. Stat. § 609.715 – Presence at an Unlawful Assembly ("Whoever without lawful purpose is present at the place of an unlawful assembly and refuses to leave when so directed by a law enforcement officer is guilty of a misdemeanor.").

34. However, because Plaintiffs were gathered for a lawful purpose and did not disobey when directed by law enforcement to leave, Defendants did not have any arguable probable cause—much less actual probable cause—to arrest Plaintiffs.

35. After detaining Plaintiffs until past 2 a.m., Defendants sent them away with criminal charges.

36. Plaintiffs were then forced to defend themselves in court proceedings, and the charges against Plaintiffs were ultimately dismissed on October 29, 2021.

[Margin comment: Deleted: Defendants]

37. Plaintiffs were damaged by the Defendants' unlawful conduct, suffering unreasonable search and seizure, unlawful arrest, criminal prosecution, dignitary harm, emotional pain and suffering, attorneys' fees, and the costs of bringing suit.

38. All Defendants are liable both for their own direct involvement in the deprivation of Plaintiffs' civil rights and for their failures to intervene as others deprived Plaintiffs of their civil rights.

39. The managerial and supervisory Defendants are additionally liable for their managerial and supervisory acts and omissions that contributed to the deprivation of Plaintiffs' civil rights.

## COUNT 1:

## VIOLATIONS OF THE UNITED STATES CONSTITUTION

## TITLE 42 U.S.C. § 1983

*As to all Defendants*

40. Plaintiffs incorporate the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

41. 42 U.S.C. § 1983 prohibits, *inter alia*, state actors from depriving persons of any rights, privileges, or immunities secured by the United States

Constitution, including the rights to be free from unreasonable search and seizure and unlawful arrest as guaranteed by the Fourth Amendment and incorporated through the Fourteenth Amendment. These rights were clearly established in April 2021.

42. In violation of 42 U.S.C. § 1983, Defendants deprived Plaintiffs of their rights when they seized, searched, arrested, and criminally charged Plaintiffs without probable cause or legal justification of any kind.

43. Defendants' actions, which would chill a person of ordinary firmness from engaging in protected conduct, were not objectively reasonable under the First and Fourth Amendments. Defendants are not entitled to any absolute or qualified immunity.

44. As a direct and proximate result of the Defendants' actions, Plaintiffs have been injured, suffering unreasonable search and seizure, unlawful arrest, criminal prosecution, dignitary harm, emotional pain and suffering, attorneys' fees, and the costs of bringing suit.

45. Defendants, as a result of their illegal behavior, are liable to Plaintiffs for the above-mentioned injuries, as well as punitive damages.

46. Total damages are to be further determined at trial.

## COUNT 2:

## **FALSE ARREST / FALSE IMPRISONMENT**

## **MINNESOTA COMMON LAW**

### *As to all Defendants*

47. Plaintiffs incorporate the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

48. Under Minnesota law, if an arrest is made without proper legal authority, it is a false arrest, and so false imprisonment. Baribeau, 596 F.3d at 481; Lundeen v. Renteria, 302 Minn. 142, 224 N.W.2d 132, 135 (1974). An arrest for a misdemeanor conforms to Minnesota law only when police officers have observed conduct giving rise to probable cause sufficient to believe that the offense was committed. Baribeau at 481–482; Johnson v. Morris, 453 N.W.2d 31, 36 (Minn. 1990); Henry v. Comm'r of Public Safety, 357 N.W.2d 121, 122–23 (Minn. Ct. App. 1984). Police officers are not entitled to immunity when they commit a "willful or malicious wrong." Baribeau at 482; State ex rel. Beaulieu v. City of Mounds View, 518 N.W.2d 567, 569 (Minn.1994). The "willful and malicious wrong" standard contemplates "whether the official has intentionally committed an act that he or she had reason to believe is prohibited." Baribeau at 482; Beaulieu at 571.

49. Defendants violated Minnesota law when they intentionally, willfully, and maliciously arrested Plaintiffs without probable cause or legal authority of any kind, and in the face of clearly established law that easily clears the "willful and malicious" standard.

50. As a direct and proximate result of the Defendants' actions, Plaintiffs have been injured, suffering unreasonable search and seizure, unlawful arrest, criminal prosecution, dignitary harm, emotional pain and suffering, attorneys' fees, and the costs of bringing suit.

51. Defendants, as a result of their outrageous and illegal behavior, are liable to Plaintiffs for the above-mentioned injuries, as well as punitive damages.

52. Total damages are to be further determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that the Court:

Enter a judgment in favor of Plaintiffs and against Defendants:

1. An order granting Plaintiffs joint and several judgement;

2. An order granting Plaintiffs compensatory damages in such amount as the jury may determine;

3. An order granting Plaintiffs punitive damages in such amount as the jury may determine;

4. An order granting Plaintiffs injunctive and declaratory relief against Defendants, whereby the Defendants are temporarily and permanently enjoined and restrained from any further illegal action against Plaintiffs and those similarly situated.

5. An order for Defendants to pay Plaintiffs' costs, interest and attorneys' fees, as allowed under Title 42 U.S.C. § 1988.

6. An order for Defendants to pay any and all further relief available, such as any relief this Court may consider equitable or appropriate.

*Plaintiffs demand a jury trial.*

Dated: February 3, 2023	**NEWVILLE PLC**

*/s/ Joshua A. Newville*
Joshua A. Newville,
MN Attorney Reg #395221
30 South 9th Street, #700
Minneapolis, MN 55402
Phone: 612-900-2563
Email: josh@newville.com
*Attorney for Plaintiffs*

14